[No. 1706. Decided July 15, 1895.]

THE STATE OF WASHINGTON, *Respondent*, v. ADOLPH KRUG, *Appellant.*

GRAND JURY — MANNER OF SELECTION — EMBEZZLEMENT BY CITY TREASURER — WHAT CONSTITUTES — INDICTMENT — INSTRUCTIONS — COMPETENCY OF JURORS.

The provisions of § 58, Code Proc., requiring the county commissioners to select annually a list of persons qualified to serve as grand jurors is not mandatory; and an indictment found by a grand jury selected from a venire of the preceding year which had not been exhausted is not prejudicial to defendant when the jury is otherwise qualified to serve.

Sec. 57 of the Penal Code, providing that "if any state, county, township, city, town, village or other officer elected or appointed under the constitution or laws of this state shall, in any manner not authorized by law, use any portion of the money intrusted to him, in order to make a profit out of the same, or for any purpose not authorized by law, he shall be deemed guilty of a felony," applies to the city officers chosen under a freeholders' charter, which cities of the first class are authorized by the constitution and legislature to frame for themselves.

Under Penal Code, §§ 57, 58, an indictment charging a city treasurer with unlawfully, feloniously, and in a manner not authorized by law, using a certain amount of public money, under his care and control as such treasurer for safe keeping, in order to make a profit out of the same, is sufficiently direct and certain as to the crime charged, and specifies with sufficient particularity the acts and cir-

cumstances necessary to constitute the crime of embezzlement of public funds under said provisions of the law.

The fact that a juror is a tax-payer is not ground for challenge upon the trial of a public officer charged with the embezzlement of public funds.

In a prosecution of a public officer for having made a profit out of public funds, it is not ground for challenge to a juror that he has formed an impression that the defendant had loaned money, either that of his own or of the city, the juror having no idea to whom the money belonged and having formed no opinion as to the defendant's guilt or innocence.

The fact that a juror has formed an impression as to the defendant's guilt or innocence, but disclaims having formed any opinion, will not subject him to challenge on the ground of actual bias.

In charging a jury as to the inference of guilt from defendant's silence, it is not erroneous to employ the words "no inference of guilt *should* arise in the minds of the jury," instead of the words "no inference of guilt *shall* arise," etc.

In regard to the presumption of innocence it is not erroneous to charge that "the law presumes the innocence of a person accused of a crime, and this presumption is not a matter of form merely which the jury may disregard at pleasure, but it is a part of the law of the land, and it is a right guaranteed by that law to every person accused of crime, and this presumption continues with the defendant throughout all the stages of the trial until the case has been finally submitted to the jury and the jury has found that this presumption has been overcome by the evidence of the prosecution in the case beyond a reasonable doubt."

In regard to reasonable doubt, it is not erroneous to charge, in effect, that a reasonable doubt is such a doubt as a man of ordinary prudence, sensibility and decision, in determining an issue of like concern to himself, as that before the jury is to the defendant, would allow to have any influence upon him, or cause him to pause or hesitate in arriving at his determination; that such a doubt should grow out of the evidence in the case and not be merely speculative, conjectural or imaginary.

In a prosecution against a public officer for embezzlement it is not erroneous for the court to charge the jury that the purpose of the statute, under which the prosecution was had, was to restrain public officers from using for their own profit, or in any other manner than is authorized and directed by law, the public money intrusted to them for safe keeping.

In a prosecution of a city treasurer for appropriating public funds to his own use for purposes of profit, in which the evidence showed

19—12 WASH.

that the treasurer, as such officer, had given a check to a certain individual, drawn on a bank having city funds on deposit, which had been paid by New York exchange, it is not erroneous to charge the jury that, if the defendant drew an instrument, signing the same as city treasurer, directing a bank, in which money was deposited to the credit of the city, to pay a given sum to a certain individual, and that the bank obeyed the direction and charged on its books the money to the city and lessened its credit in said sum, that such was a payment of money; and that the jury should construe the check or instrument merely as the instrumentality by which the city's money was transferred from the possession of defendant to another, and, if the transfer was a profit, they must find the defendant guilty.

*Appeal from Superior Court, King County.*

*James Hamilton Lewis* (*Stratton, Lewis & Gilman, Charles F. Fishback,* and *J. Henry Denning,* of counsel), for appellant.

*John F. Miller,* Prosecuting Attorney, and *A. G. Mc-Bride,* for The State.

The opinion of the court was delivered by

DUNBAR, J.—A grand jury was impaneled in King county, to investigate a charge of embezzlement and other unlawful use of the funds of the city of Seattle, by its treasurer, Adolph Krug, the appellant herein. An indictment was returned against the appellant and a trial was had before the Hon. J. Z. MOORE, of Spokane county, who presided in the absence of the regular judge, Hon. T. J. HUMES.

The indictment was based upon § 57 of the Penal Code, charging the unlawful use of the money of the city of Seattle in order to make a profit out of the same. Appellant introduced no testimony in his own behalf, but demurred to the complaint, raised many objections to the introduction of testimony, and, upon the testimony of the state, was found guilty as charged.

Judgment was pronounced and an appeal was taken to this court upon the errors alleged.

The first contention of the appellant is that the court erred in not sustaining a motion to quash the indictment, made upon the ground that the grand jury was not properly selected, properly impaneled and properly chosen.   It is insisted that the grand jurors had not been selected by the county commissioners for the year 1893 or 1894; that the same had not been certified in separate lists to the clerk of the superior court as provided in § 58 of the Code of Procedure; which provides that:

"Every board of county commissioners, on or before the first Monday of February in each year, shall select from the persons in their county qualified to serve as petit jurors the names of one hundred persons to serve as petit jurors for the ensuing year, and from the persons in their county, qualified to serve as grand jurors, the names of one hundred persons to serve as grand jurors for the ensuing year, and shall certify the same in separate lists to the clerk of the superior court."

These provisions of the statute it is insisted by the appellant are mandatory and intended to secure for each year a new list of qualified electors and freeholders; and that, the question of the qualification of the grand jury having been timely raised, it was prejudicial error on the part of the court to overrule the motion.   We do not think this contention can be sustained.   We are inclined to think that this was only an irregularity which does not affect the substantial rights of the defendant.   Sec. 62 of the same chapter which provides for the selection of the grand jury, provides especially that:

"The failure on the part of any officer to perform the duties required within the time, or other irregu-

larity in said drawing, shall in no way invalidate the selecting, drawing or summoning of said jurors."

This, it seems to us, would sufficiently indicate that the intention of the legislature was that the provision relied upon by the appellant was not a mandatory provision, the omission of which would invalidate the proceedings. But, as further showing that there is no particular virtue in the provision, § 63 of the same chapter provides that:

" If for any cause the court shall see fit to set aside the venire for grand or petit jurors, returned as above provided, an open venire may thereupon issue to the sheriff," etc.

And as further sustaining the same idea, the latter part of § 58 (the section relied upon by appellant) provides that:

" If from any cause the county commissioners are unable to select the full number of names in this section provided for, they shall select such less number as they may agree upon."

The whole chapter seems to refute the idea that the provisions of § 58 are mandatory, or that the defendant has any vested right in any particular mode of choosing the grand jury.

Mr. Bishop, in his work on Criminal Procedure, § 875 (3d ed.), under the head of Directory Statutes, says:

"A statute may be only directory to the officers,—as, that the grand jurors shall ' be summoned at least five days before the first day of the court,' or that the court shall impanel the grand jury on the first day of the term,—a non-compliance with which is no ground for setting aside the proceedings on application of the defendant."

The objection in the case at bar is simply an objec-

tion of time. We think, under the authorities and under the provisions of the statute itself, the objection should not be sustained, and that the court committed no error in refusing the motion. In fact, we judge from the record in this case, that it was really not the desire of the counsel for the defense that this motion should be sustained by the court, for the new judge was informed by the counsel that it had been the practice of the court that the jury had a right to remain until it should please the judge to issue a new venire, and that the judge of that court had ruled against him upon this contention. But, however that may be, nothing appears in the record to indicate that the defendant was in any way injured by the action of the court, or that the grand jurors were not qualified grand jurors under the law. The qualification of a grand juror after all is the main question to decide, and that question could have been decided in each instance by an examination of the individual juror.

The next contention is that § 57 of the Penal Code does not include within its provisions a city officer. This section is as follows:

" If any state, county, township, city, town, village or other officer elected or appointed under the constitution or laws of this state, . . . shall, in any manner not authorized by law, use any portion of the the money entrusted to him for safe keeping, in order to make a profit out of the same, or shall use the same for any purpose not authorized by law, he shall be deemed guilty of a felony," etc.

The defendant was an officer under a freeholders' charter, to-wit, one voted by the people in cities of the first class, viz., the city of Seattle, and it is contended therefore that he is not a city officer, elected or appointed under the constitution, because he is nowhere

denominated or designated as one of the officers for the execution of the mandates or provisions of that instrument; that he is not an officer elected or appointed under any law of the state of Washington prescribed by the legislature of the state for the execution of any law of the state of Washington, and that, therefore, he is not within the provisions of § 57 of the Penal Code, nor within the letter or intendment of the same.

We think that such a construction of the law would be forced and unnatural, and the authorities cited by the appellant to sustain his contention are not in point. Most of them enter upon a discussion of who were or who were not state officers. It is not contended by the state in this case that the appellant is a state officer, but that he, as a city officer, falls within the provisions of § 57. The statute specially names a city officer, and it seems to us that there can be no question that such officer is elected under the constitution and laws of this state. The legislature, by authority of the constitution, grants the charters to cities of the first class, and under the provisions of the charter which is granted by the legislature the city treasurer is elected. Of course, this is a somewhat indirect operation of the law, but the election of the city treasurer nevertheless flows from the laws and the constitution, and certainly were it not for the laws of the state the office of city treasurer of the cities of the first class could not exist. Consequently, it must logically follow that this officer is elected under the constitution and laws of the state, for the law conferring upon cities a right to provide for the election of its officers is a delegation of the power of the state to the city.

Sec. 521 of the General Statutes provides that, "the legislative powers of any city, organized under the pro-

visions of this act . . . who, together with such other elective officers as may be provided for in such charter, shall be elected at the times, in such manner, and for such terms, and shall perform such duties and receive such compensation, as may be prescribed in such charter." . As we have before said, the action of the city and the validity of its acts in electing its treasurer, all flow from and are dependent upon these provisions of the law. The constitution itself, in § 14 of art. 11, seems to have initiated the idea upon which this statute is based, and provides that the making of profit out of county, city, town or other public money, or using the same for any purpose not authorized by law, by any officer having the possession or control thereof, shall be a felony, and shall be prosecuted and punished as prescribed by law; and the enactment of § 57 is in perfect harmony with this provision of the constitution, and makes provision for carrying it into effect. It would, indeed, destroy not only the manifest intention of the constitution, but of the statute, to hold that this provision of the statute did not apply to treasurers who were not directly elected under the provisions of the law.

A question, however, which has given the court vastly more trouble than the one just discussed, and which is really the vital question in this case, as we view it, is embodied in the contention that the demurrer should have been sustained because the indictment did not state facts; that is, that. it was neither direct nor certain as regards the crime charged, nor was it direct or certain in charging the particular circumstances of the crime necessary to constitute a complete crime under the law. The charging part of the indictment is as follows:

"Adolph Krug and Henry Fuhrman are accused by the grand jury of the State of Washington in and for King county, said state, by this indictment, of the crime of using public money in order to make a profit out of the same, and for purposes not then and there authorized by law, committed as follows: That on the 2d day of July, 1892, the said Adolph Krug, then and there being and at said time was a city officer, to wit, the duly elected, qualified and acting city treasurer of the city of Seattle, in the county of King, State of Washington, and being then and there charged under the provisions of the charter and the amendments thereto of the said city of Seattle, the said charter being commonly known as the freeholders' charter, with the receiving and safekeeping of all moneys belonging to and the property of the said city of Seattle, the said city of Seattle then and there being a municipal corporation duly organized and existing under and by virtue of the laws of the Territory, now State, of Washington, and as such officer and city treasurer as aforesaid the said Adolph Krug was then and there, by virtue of his said city office, entrusted with a sum and amount of $10,000 in lawful money, for safe-keeping, the same being public money belonging to and the property of the said city of Seattle, and which said money was under the care, custody and control of the said Adolph Krug as such officer and city treasurer as aforesaid; and the said Adolph Krug, officer and city treasurer as aforesaid, on the 2d day of July, 1892, in said King county, State of Washington, unlawfully, feloniously and in a manner not authorized by law, did use the said $10,000 public money as aforesaid, of the value of $10,000 in lawful money, in order to make a profit out of the same, and for purpose then and there not authorized by law," etc.

It is most earnestly urged by the appellant that no statement of facts is set forth in this indictment which would notify the defendant of the particular crime with which he was charged, and many cases are cited to support this contention, notably a case decided by

this court, viz., *State v. Carey,* 4 Wash. 424 (30 Pac. 729).

There is no question but that, as a general proposition of law under the ordinary statutes and under the common law requirements, this indictment would not be sufficient, and the case of *State v. Carey, supra,* was based upon the provisions of our statute and the general provisions of law in relation to criminal procedure. But that case, with all cases of similar character, is not in point here for the reason that our statute especially provides that the ordinary requirements of an indictment may be omitted from indictments for this particular crime, § 58 of the Penal Code providing that:

"In prosecutions for the offenses named in the next preceding section, [the section under which this indictment was brought], it shall be sufficient to allege generally, in the information or indictment, that any such officer . . . has made profit out of the public money in his possession or under his control, or has used the same for any purpose not authorized by law, to a certain value or amount, *without specifying any further particulars in regard thereto;* and on the trial evidence may be given of all the facts constituting the offense and defense thereto."

So it will be seen that this statute carries the indictment in this case beyond the pale of the common law or the ordinary provisions for criminal pleadings in statutes; and as the indictment follows as closely as it could be made to do the provisions of the statute, the only question that remains to be determined is, is the statute constitutional, or can it be sustained in the face of the 14th amendment to the constitution of the United States, and § 22, art. 1 of the constitution of the State of Washington.

It is contended by the appellant, with some show of reason, that the information furnished in this indict-

ment is of rather a meager quality as well as quantity, and many cases are cited bearing on this proposition. We think, however, that they can all be distinguished from the case in point. The nearest to an analogous case, and the one which is referred to in nearly all the other cases cited, is that of *United States v. Cruikshank*, 92 U. S. 542. There it was held that in criminal cases the defendant had a constitutional right to be informed of the nature and cause of the accusation, and that the ·indictment must set forth the offense with clearness and all necessary certainty to apprise the accused of the crime with which he stands charged, and that every ingredient of which the offense was composed must be accurately and clearly alleged. In that case the defendant was charged with an intent " to hinder and prevent the parties in their respective free exercise and. enjoyment of the rights, privileges, immunities and protection granted and secured to them respectively as citizens of the United States and as citizens of said State of Louisiana, . . . for the reason that they . . . being then and there citizens of said state and of the United States, were persons of African descent and race, and persons of color, and not white citizens thereof;" and the indictment further charged them with an intent to hinder and prevent them " in their several and respective free exercise and enjoyment of every, each, all and singular the several rights and privileges granted and secured to them by the constitution and laws of the United States." The same general statement of the rights to be interfered with were found in the other counts; and the court said:

"According to the view we take of these counts, the question is not whether it is enough, in general, to describe a statutory offense in the language of the

statute, but whether the offense has here been described at all. The statute provides for the punishment of those who conspire ' to injure, oppress, threaten or intimidate any citizen, with intent to prevent or hinder his free exercise and enjoyment of any right or privilege granted or secured to him by the constitution or laws of the United States.' These counts in the indictment charge, in substance, that the intent in this case was to hinder and prevent these citizens in the free exercise and enjoyment of ' every, each, all and singular ' the rights granted them by the constitution, etc. There is no specification of any particular right. The language is broad enough to cover all."

After laying down the general propositions of law which we have before noted, the court proceeds to say:

"All crimes are not so punishable. Whether a particular crime be such a one or not, is a question of law. The accused has, therefore, the right to have a specification of the charge against him in this respect, in order that he may decide whether he should present his defense by motion to quash, demurrer or plea; and the court, that it may determine whether the facts will sustain the indictment. So here, the crime is made to consist in the unlawful combination with an intent to prevent the enjoyment of any right granted or secured by the constitution, etc. All rights are not so granted or secured. Whether one is so or not is a question of law, to be decided by the court, not the prosecutor. Therefore, the indictment should state the particulars, to inform the court as well as the accused. It must be made to appear,—that is to say, appear from the indictment, without going further,— that the acts charged will, if proved, support a conviction for the offense alleged. . . . These counts are too vague and general. They lack the certainty and precision required by the established rules of criminal pleading."

It will be seen by an investigation of the law upon which the indictment in the case at bar is based, that

the trouble anticipated by the court ·in the case of
*United States v. Cruikshank, supra,* cannot arise, for the
indictment here charges the unlawful act or the par-
ticular act which by the law is made unlawful, viz.,
the use of the money intrusted to him for the purpose
of making a profit out of it, and a use of it in a man-
ner not provided by law. And the accused in this
case has the benefit of the specification of the particu-
lar act constituting the crime, for under the statute
the crime consists of the acts specified. If he makes a
profit out of the money intrusted to his care in any
way, he falls within the provisions of the statute; or
if he uses the money in any way not provided by law,
he falls within the provisions of the statute. The leg-
islature, doubtless recognizing the fact that it is ex-
ceedingly difficult to convict for embezzlement in cases
of this kind where the ordinary rules of criminal prac-
tice obtain, sought, in the interest of justice, and at
the same time without depriving the defendant of any
material right, to formulate a statute which would
render easy the administration of justice, and under
which the real facts in the case could be ascertained.
This provision of the law may well be sustained, at
least so far as its application goes to officers who, un-
der the law guiding and directing their duties, have
sufficient notice furnished them by an indictment
drawn under this statute.

· A provision of the charter which prescribes the
duties of the city treasurer of the city of Seattle is to
the effect that " it shall be the duty of the city treas-
urer to receipt for moneys of the city and pay out the
same only on warrants drawn in pursuance of the
order of the city council, signed by the mayor and
countersigned and registered by the city comptroller."
It follows that any use of money by the city treasurer

except upon warrants is unauthorized by law; and it would be a complete and easy defense by this officer to show that all the money which had come into his hands as said treasurer, over and above the amount remaining in the treasury, had been paid out upon warrants in the manner prescribed by law. If he can show this, then the accusation that he has used it in a manner not authorized by law, or that he has made profit out of the funds of the city, cannot be sustained. If he cannot show it, the presumption ought to attach that the accusations are true; for, in the very nature of the office and the duties of the officer, it is impossible for the state to allege or prove the embezzlement of any particular money, or any particular part of any funds. Any such restrictions as these would have the effect of allowing embezzling officers of this description to escape the penalties of the law, while the liberal provisions of the statute do not in any way prevent them from making a complete defense to the charge in case of their innocence.

For this reason, we think the statute in this case should be sustained; and for the reasons mentioned above, viz., the impossibility of describing particular moneys or particular funds, all the objections by the appellant to the introduction of evidence in this case, without specifically mentioning them, will be overruled.

It is alleged that the court erred in refusing the challenge for cause to juror William Fox, on the grounds that the juror testified "that he was a resident for years and a taxpayer in the city of Seattle, and had paid money to the city treasurer, of which Mr. Krug was treasurer, and which money he was being charged with having converted." We think this contention is hardly worthy of discussion. Carried to its

logical conclusion, every taxpayer in the country would be held to be an illegal juror in all cases where officers were charged with having embezzled or misappropriated the public funds, and indeed in every criminal case, for, under our laws, upon the conviction or acquittal of a person charged with a felony depends a question of costs to the state or county.

The next contention, that the court erred in not sustaining the challenge to juror Fox for actual bias, is equally without foundation. The juror nowhere said that he had an opinion as to the merits of this case. It is true that he stated that, from some accounts he had seen in the newspaper, he had an opinion or an impression that the appellant Krug had loaned money; but he continually asserted that he did not know or have any idea whether it was his own money or whether it was the city's money, and several pages of adroit cross-examination failed to elicit proof that the juror had any opinion as to the guilt or innocence of the defendant of the crime with which he was charged. In fact, he positively asserted all the time that he had not. He may have had an opinion that the defendant had loaned money, or that he had bought a horse or sold a farm, but such an opinion could in no way be material to the issue involved, viz., whether he had made a profit out of money of the city of Seattle.

It is also claimed that the court erred in not sustaining the challenge to the juror Cullis, on the ground of actual bias. We do not think the record will sustain this contention. This juror, upon his examination, in answer to the question, "Now, on the assumption that the facts were true as you read them in the paper, you formed an opinion, did you not?" said, "Well, I think not. I formed an impression;" and the whole cross-examination did not elicit the fact that there was any-

thing more than a mere floating impression pervading the mind of the juror at the time of the trial. The word "impression," if it can properly be applied to a mental operation, does not reach the strength of an opinion. An opinion is a conviction which is based, and must be based, upon testimony. An impression is a mere fancy or lodgment in the mind which is not based upon testimony, and the existence of which can not be traced to proof; and in this case the juror himself distinguished between an opinion and an impression by insisting that he had not formed an opinion and did not entertain any at the time, but that it was a mere impression. We think that the case does not fall within the spirit or reasoning of the cases of *State v. Murphy*, 9 Wash. 204 (37 Pac. 420), or *State v. Wilcox*, 11 Wash. 215 (39 Pac. 368).

The same may be said of the action of the court in overruling the objection to juror Manogue.

The objection that, under the constitution and laws of the state, Judge MOORE was ineligible to try this cause, was disposed of in the case of *State v. Holmes*, *ante*, p. 169.

A careful examination of the instructions given by the court convinces us that no error was committed in this particular. The charge was evidently carefully prepared and guarded every material right of the defendant, while it correctly enunciated the law so far as the rights of the state were concerned. The criticisms of the appellant on this charge were mostly hypercritical, as is shown by the following:

"The court erred in giving charge 10 as to defendant's silence. It was wrong in this:

"1st. It stated to the jury that from his silence no inference of guilt should arise in the minds of the jury against the defendant. This was equivalent to saying to the jury that no inference of guilt ought to arise in

their minds.   It left to the jury the mere fact that·as a matter of propriety or ordinary justice probably no inference ought to arise; that is, should arise.   The statute is mandatory.   It says that the court must charge the jury that no inference *shall* arise.   In other words, that the jury should be charged that the inference of guilt shall not arise from the silence.   The mandatory words of the statute should have been given, and not the discretionary clause."

It is evident from the reading of the charge that the court complied fully with the statute in respect to the inference of guilt in his instruction to the jury on this point; and if appellate courts should interfere with the verdicts of juries and the administration of the law upon such strained construction of language or choice of words as is here indicated, the administration of law would become a farce and trial by lower courts a useless labor.

It was particularly erroneous, alleges counsel for the appellant, for the court to say to the jury that "the presumption of innocence remained with the defendant only up to the submission of the cause to the jury, and then ceased when the presumption had been overcome by the evidence."   It might have been error if the court had given any such instruction as the one complained of, but the record shows that it did not. Instruction No. 2 was as follows:

"The law presumes the innocence of a person accused of a crime, and this presumption is not a matter of form · merely which the jury may disregard at pleasure, but it is a part of the law of the land, and it is a right guaranteed by that law to every person accused of crime; and this presumption continues with· the defendant throughout all the stages of the trial until the case has been finally submitted to the jury and the jury has found that this presumption has been overcome by the evidence of the prosecution in the case beyond a reasonable doubt."

So that the contention of the appellant that the presumption of innocence attends the defendant throughout the deliberations of the jury and until the arrival of the verdict is fully sustained by the instruction criticised; for under this instruction the jury are told that this presumption is not only with the defendant throughout all the stages of the trial and until the case has been finally submitted, but until the jury have found that this presumption was overcome by the evidence. The jury cannot find that the presumption is overcome by the evidence until they go into an investigation of the evidence, and it is idle to talk about a jury being misled by such an expression as this, even if the court had stopped with the expression, "until the case has been finally submitted to the jury," for everything that is submitted to the jury goes with them into their deliberations. That is the only object of the submission of evidence, or the submission of an instruction to a jury, and a juryman who would be dull enough to place the construction contended for by appellant upon any such an instruction, and conclude that this presumption of innocence ceased before it would avail the defendant anything, would be so dull as to be absolutely irresponsive to any intelligent instruction at all.

Instruction No. 3 is to the effect that a reasonable doubt is such a doubt as a man of ordinary prudence, sensibility and decision in determining an issue of like concern to himself as that before the jury is to the defendant would allow to have any influence upon him or cause him to pause or hesitate in arriving at his determination; that such a doubt should grow out of the evidence in the case and not be merely speculative, conjectural or imaginary. This instruction is criticised because it is alleged that it assumes that there

20 — 12 WASH.

might be a doubt in the minds of a jury, but that such would be a speculative, conjectural or an imaginary one. We do not think there is anything in the instruction that would warrant the conclusion that there was any such an assumption, or that it could be deduced that the court thought that if there was a doubt that such doubt would be speculative, conjectural or imaginary. As a matter of fact, speculative, conjectural or imaginary doubts should not lead to the acquittal of the defendant charged with any crime. It might be that it would have been a better use of language if the court had instructed the jury that a proper doubt could be entertained from the *want of evidence;* but we think that the jury were not misled by going into any refined distinctions between the phrases "want of evidence" and "should grow out of the evidence."

And the fourth objection, that it admitted the right of a doubt arising upon the law as charged to the jury, is not tenable, for the jury have no right to doubt the law. Legal propositions are for the court. It is a juror's province to decide questions of fact by applying to them the principles of law announced by the court.

Objection is made to charge No. 5, for the reason that to state the object of the statute was to invite injunctive proceedings by the jury, the court in this case stating that the purpose of this statute was to restrain public officers from using for their own profit the public money intrusted to them for safe keeping, or in any other manner than as authorized and directed by law. If the defendant's case is so shaky that it will not bear the discussion of a law proposition or a proper definition of the statute in the presence of the jury, that is his misfortune and not the

fault of the law. The purpose of this statute had to be understood by the jury before they could come to a correct determination as to whether or not the defendant had violated the provisions of the statute in committing the acts with which he was charged.

In charge No. 6 the court instructed the jury that if they believed from the evidence that there was money deposited to the credit of the city in the Washington National Bank, and if the defendant drew an instrument, signing the same as city treasurer, directing Henry Fuhrman to be paid $10,000, and that the Washington National Bank obeyed the direction and charged on its books the money to the city and lessened its credit $10,000, that such was a payment of money, and that the jury should construe the check or instrument merely as the instrumentality by which the city of Seattle's money was transferred from the possession of the defendant to Henry Fuhrman; and upon these facts, if the transfer was a profit, they must find the defendant guilty as charged. We think this instruction was exactly right. The facts proven upon which the instruction was based were substantially as follows: The defendant gave Henry Fuhrman a check on the Washington National Bank for $10,000. Fuhrman presented the check for payment. The bank had more than enough city funds on hand to pay it in money, but the defendant preferred New York exchange, which he received. The exchange was sent to New York and paid, and Fuhrman got the $10,000. Under these facts the appellant claims there was only an exchange of credits and no money was paid. The instruction of the court is based upon the theory that, in contemplation of law at least, this was money. It would be a travesty upon the administration of the law,

if treasurers who are the custodians of the funds of the people should be allowed to escape the penalty of embezzlement by any such subterfuge as this theory would protect. The treasurer by law is made responsible for all moneys which come into his possession. He is the custodian of those moneys. He can keep them in a safe under his own personal inspection and jurisdiction, or he can deposit them in the banks; but whether kept in a personal safe or deposited in a bank they are still to all intents and purposes the funds of the city. The practical result of the transaction in this case was that, when this check was given to Fuhrman and was paid to Fuhrman by the New York exchange, and that amount charged to the account of the city, the city of Seattle had its account decreased to the amount of the check, and it was just as much a disposition of that $10,000 by the treasurer as though he had gone to the bank and got the money himself and paid it to Fuhrman, or had loaned him that amount of money out of the specie which he received, before it had been taken to the bank at all. And, if followed another step, this theory would reach the case criticised by Judge CHRISTIANCY in *People v. Mc Kinney,* 10 Mich. 54, where he says:

"The whole force of this objection, therefore, rests upon the assumption that the treasurer could perform no act by which the money could be thus abstracted or converted to his own use or benefit, unless at the time of the act he were personally present where the money happened to be. This assumption is so manifestly unfounded, in law or fact, as to require no comment."

A great many of the objections raised by the counsel to the instructions and to the admission of testimony are based upon this false theory that there can be no

proof of any transaction which does not involve the actual specified money of the.city.

Errors are founded upon the court's refusal to give certain instructions prepared by counsel for the defense, but we think that all. the instructions which properly stated the law had been already given in substance by the court ·on its own motion.

We have examined all the .errors, and they are numerous, alleged by the appellant, and with the exception of those discussed, think they are entirely without merit.

The judgment will therefore be·affirmed.

SCOTT, J., concurs.

HOYT, C. J. (*concurring*).—I concur in the opinion of Judge DUNBAR except that I am of the opinion that cities of the first class derive their powers from the constitution and not from the legislature.

ANDERS, J. (*dissenting*).—I dissent on the sole ground that, in my opinion, the indictment fails to state the facts constituting the offense attempted to be charged.   Although it is in the language of the statute, I nevertheless .think that it did not apprise the defendant of the nature and cause of the accusation, and therefore deprived him of a constitutional right.

GORDON, J.—I agree with what is said by Judge ANDERS.