[No. 2204.   Decided December 10, 1896.]

THE STATE OF WASHINGTON, *Respondent*, v. GEORGE W. BOGGS, *Appellant*.

APPEAL — ERROR NOT OF RECORD — EMBEZZLEMENT BY CITY TREASURER — ELEMENTS OF CRIME — INFORMATION — SUFFICIENCY OF EVIDENCE.

Alleged error of the trial court in refusing to quash an information, on the ground that the offense therein charged was a different one from that for which the defendant had been extradited from another state, will not be considered on appeal when there is nothing in the record, beyond such motion, showing a difference in the two informations.

An information charging a city treasurer with making a profit out of public funds intrusted to him for safe keeping by receiving and accepting interest thereon from a certain bank, sufficiently charges a crime under § 57, Penal Code, which forbids public officers from using, in any manner not authorized by law, any portion of the money intrusted to them for safe keeping, in order to make a profit out of the same.

In a prosecution against an officer for making a profit out of public funds intrusted to his safe keeping, a verdict of guilty is warranted when it appears that he was treasurer of a certain city; that the money of the city was in his control; that he deposited the same with a certain bank, which gave defendant credit for interest on the city's money; that defendant had an individual account at the bank, to which credit for interest on the city's money was transferred by direction of the bank president; and that defendant checked against said individual account to the amount of his deposit and of such interest credited to him, although he may

16  143
17   89
16  143
18  645

have testified to his having no knowledge of the fact that such interest was being credited on his account, there being, however, circumstances tending to show knowledge on his part, such as a rapid increase of deposits soon after interest began to be credited and a corresponding increase in defendant's overdrafts on the bank in proportion as the interest deposits increased.

The fact that public moneys are deposited by a city treasurer in bank with no intent of making a profit out of them, will not excuse such officer from penal liability, if he thereafter knowingly receives and appropriates to his own use the interest allowed on such deposits of public moneys.

Appeal from Superior Court, Pierce County.—Hon. EMMETT N. PARKER, Judge. Affirmed.

*Fremont Campbell,* and *Taylor, Dennis & Luse,* for appellant.

*B. W. Coiner,* Prosecuting Attorney, and *Lewis P. Shackleford,* for The State.

The opinion of the court was delivered by

DUNBAR, J.—The appellant was indicted for the violation of § 57 of the Penal Code. The essential part of the indictment was as follows:

"And of such moneys of said city so in his possession and under his control and entrusted to him for safe keeping as aforesaid, he, the said George W. Boggs did then and there unlawfully, feloniously and in a manner unauthorized by law use the amount of thirty thousand dollars thereof in order to make a profit out of the same and for a purpose not then and there authorized by law; and did then and there make a profit out of the same by then and there receiving and accepting interest thereon from the Tacoma Trust & Savings Bank," etc.

Upon the closing of the state's testimony a motion was made to instruct the jury to bring in a verdict of not guilty, upon the ground that the testimony offered by the state was not sufficient to sustain a ver-

dict, and for other reasons of similar import. The motion was overruled; testimony was introduced by the defense, and the jury was charged by the court and returned a verdict of guilty. Upon this verdict the judgment of the court was entered, to the effect that the defendant should be imprisoned in the penitentiary at hard labor for six years.

A statement is made in the brief of appellant that the defendant was extradited from the state of Oregon upon a warrant issued upon a complaint which was not substantially the complaint upon which the defendant was tried, and motion was made by the defendant to quash the information upon the ground that the offense therein charged was a different offense from that for which he was extradited from the state of Oregon; that he was not being tried for the offense for which he was extradited, and that he had not been held or arrested upon the charge or for the offense named or set out in the information and was not extradited for said offense. This motion was overruled and exceptions taken, and the allegation that the court erred in overruling this motion is argued quite extensively by the appellant in his brief. The record, however, fails to disclose that this question is properly before this court. It shows that the motion was made, as alleged by the appellant, and overruled by the court; but there is nothing in the record from which this court can determine that the defendant was not being tried for the offense for which he was extradited, and that the offense charged in the new complaint was in any way different from the offense charged in the complaint upon which he was extradited. So that this court does not feel called upon to decide any questions that are not raised by the record.

It is alleged in appellant's brief that a demurrer was

10 — 16 WASH.

interposed to the information on the ground that it did not state facts sufficient to constitute a public offense, and that it did not comply with the requirements and constitution of the state of Washington or the constitution of the United States, and was not in accordance with the provisions of the statutes made and provided. We think the record is not correctly stated. The demurrer as shown by the record was as follows:

"Comes now the defendant George W. Boggs and demurs to the information filed in the above mentioned case on the following grounds, to-wit, first, that the said information does not state facts sufficient to constitute any crime under the laws of the state of Washington; that said information does not state facts sufficient to constitute any crime."

This demurrer was overruled, and we think very properly. The sufficiency of this indictment and the legality of the statute under which it is drawn were passed upon in the case of *State v. Krug*, 12 Wash. 288 (41 Pac. 126), and we think that it is not necessary to enter into a discussion again of the propositions discussed in that case. It is contended, however, by the appellant that this indictment is distinguished from the one in the Krug case by the fact that this indictment goes further and states the manner in which the profit was made, by saying that the defendant did then and there make a profit out of the same by then and there accepting and receiving interest thereon; that these last words are a limitation of the general words preceding; that the first being the general statement that the crime has been committed, the latter states the precise act which constitutes the offense, and unless the particular facts constitute a crime, then no crime is charged by the information.

We do not think there is anything in this contention. It might be that with this specific charge, if the specific charge had not been proven, the case would have failed; but if the crime was proven at all, it was proven by testimony tending to show the particular facts charged. In fact, that was the theory upon which the case was tried, and the instruction of the court to the jury was to that effect. On this point the latter part of instruction No. 4 was as follows:

"And even though you might believe that he unlawfully used the city money in order to make a profit out of the same at any other time than that charged, you should find him not guilty unless you are satisfied from the evidence of his guilt of the particular charge in this case."

It is contended by the appellant that the statute does not contemplate this kind of a case; that the receiving of interest by the treasurer was not in the mind of the legislature at the time of the enactment of the statute; that it is a matter of common knowledge that treasurers have been commonly and usually depositing money in their hands in the banks and receiving a bonus for the same; that if the legislature had intended to stop this practice they would have passed a law in express terms forbidding such practice. It is argued that, as the practice was so wide-spread and almost universal, the members of the legislature must have known of it, and it must be presumed that, if they had intended to make such practice unlawful, they would not have left the matter by passing a law in general terms which might or might not cover the crime, but would have passed a statute in express terms forbidding such practice. The statute in question, it seems to us, will not bear any such loose interpretation, for while in one sense it is comprehensive,

yet at the same time it is definite enough.   It is as follows:

"If any state, county, township, city, town, village or other officer elected or appointed under the constitution or laws of this state, court commissioner, or any officer of any court, or any clerk, agent, servant or employee of any such officer shall, in any manner not authorized by law, use any portion of the money intrusted to him for safe keeping, in order to make a profit out of the same, or shall use the same for any purpose not authorized by law, he shall be deemed guilty of a felony," etc.

It would be impracticable and impossible for the statute to specify all the particular uses of public moneys which would fall within the scope of the act, and all of the specific methods which are not authorized by law; but it is enough, if the indictment shows that the officer in any manner not authorized by law uses the money to make a profit out of the same, or for any purpose not authorized by law.   It evidently was the intention of the law makers that the officer should receive his compensation through the medium of the salary provided, and that he should not be allowed in any way to speculate with the money intrusted to his care, or use it in any way directly or indirectly for the purpose of making a profit out of it.   An extract from the opinion in State v. Krug, supra, is cited and relied upon by the appellant, but an examination of that case and of the circumstances under which the language was used and of the question under discussion at the time, shows that it has no relevancy whatever to the question at issue.

The record in this case is exceedingly voluminous, but we have investigated it from beginning to end. Exceptions to the introduction of testimony were interposed at every step, and if such exceptions had

been sustained by the court there would have been no trial at all. The objections to the admission of the testimony, that are set forth in the appellant's brief as ground of error, we have examined thoroughly in connection with the whole record, and are of the opinion that no error was committed by the court in the admission of any of the testimony.

The question, however, which we regard as the pivotal question in the case, and the one which has given the court more trouble than all the others, is whether, conceding the legality of the testimony offered, it was sufficient as a question of law to sustain the verdict. If this case should be reversed at all it should be reversed on the ground that the court refused to instruct the jury to bring in a verdict of not guilty for the reason that the testimony offered was not sufficient to sustain the verdict. It was proven by the state that the defendant was the treasurer of the city of Tacoma; that the money of the city was in his control; that he deposited the same with the bank mentioned in the indictment; that while it was so deposited the defendant was given credit for interest on the city's money; that during said time the defendant had an individual account with the said bank; that the credit for interest was transferred to defendant's credit on his individual account, and that he checked against said account to the amount of his deposit and of the further interest credited.

The principal contention of the appellant is that this was not legal proof against him; that it was not shown that this credit was given with the consent of the defendant, or that he ever knew that such credit was given him; that there is no evidence of the vital fact that the money was paid to him as interest on city deposits, or that he received it as such; that the

debit slips and the credit slips were made upon the instructions of the bank's president, and that such action was in no way brought to the knowledge of the defendant. It is true that the entry upon the bank's books of a credit to the defendant for interest on city money would not bind the defendant or prove him guilty of the crime, if it stopped there; but the evidence shows that this money actually came into the possession of the defendant; that he appropriated it and received the benefit of this credit by drawing checks against it, which were paid.

It is claimed by the appellant that over-drafts were allowed him, and that he had no knowledge of his accounts with the bank, and that, therefore, he cannot be presumed to have known that these credits had been extended to him. It is not always necessary to prove a criminal intent by some direct or positive act. The intent may be proven by circumstances. For example, it was the old theory of the law that if recently stolen property was found in the possession of a person and no explanation thereof made, such possession would be conclusive evidence of guilt, although there was nothing connecting the person with the larceny excepting the possession; and under the modern authorities, and under all authority, the possession of recently stolen property is a circumstance which the jury have a right to consider in arriving at a conclusion as to the guilt or innocence of the defendant. And it seems to us, that the appropriation by this defendant of the moneys which were credited to him by the bank is a circumstance which the jury had a right to consider, in determining whether or not as a matter of fact he did know that this money was placed to his credit and that it was placed to his credit as interest on the money of the

city.   We think that knowledge on the part of the defendant was at least a legitimate deduction from the circumstances proven; whether it would be of sufficient weight to satisfy the mind of a juror is another proposition.   But these circumstances, of the interest having been placed to his credit, and his having appropriated that interest by drawing checks against it, connected with other circumstances in the case, to wit, that about the time the interest was credited to the treasurer the deposits in that bank began to rapidly increase; that the overdraft grew higher in proportion as the interest deposits increased; that it was the custom of the bank to allow interest on deposits of over $100,000, and many other little circumstances which are developed by the record, convince us that there was sufficient *prima facie* proof of the appropriation of this money knowingly by the defendant to sustain the verdict.   The testimony further shows that so far as the overdraft is concerned, if there had been an overdraft to any extent, the defendant would have been notified by the bank.   The jury was warranted in coming, to the conclusion that it was unreasonable that a man of ordinary business capacity would have a long transaction with a bank, without knowing something about his financial standing or something about the state of his accounts.   It is true that the defendant, when he came to testify, stated that he never had any knowledge that this money had been deposited to his credit, but the jury evidently did not believe him.   They did not think it was reasonable that he should do a large volume of business with the bank without having a pass book or without having any statement of his account from the bank from the time that he opened his account until the closing of the bank.   The following excerpt from the defendant's

testimony, it seems to us, justifies the conclusion reached by the jury. After testifying that he had a general account, and that he deposited money there :

"*Question.* What did you take as an evidence that you deposited money there ? *Answer.* I didn't take anything.

"Q. You did not take any duplicate deposit slips ? A. Well, sometimes I did and sometimes I just went and laid the money down and walked out.

"Q. Said nothing ? A. Said nothing.

"Q. Never had a bank book ? A. No, sir.

"Q. You had as to the city's deposit, hadn't you ? A. Yes, sir.

"Q. But not as to your individual deposit ? A. No, sir.

"Q. Were you ever notified as to the condition of the balance of your personal account ? A. No, sir."

He further testified in substance that he paid no attention to his account; that he knew nothing about his standing with the bank, and did not know that he had been credited with this interest account until the commencement of this action or the service of the indictment upon him, which was something over two years after the crediting of the interest account to his individual account; that during all that time he had no statement of his account and knew nothing about whether he owed the bank or the bank owed him. The jury were justified in concluding from all the circumstances that the defendant did have knowledge of this credit, and that his claim of ignorance was an unreasonable one and not justified by the circumstances. He testifies, on page 408 of the record, that when the city had concluded that it would demand interest from the banks, he went to the president of this bank and notified him of the same; that Mr. Allen, the president of the bank, said that he did not want to

pay it, but he guessed he would have to; that when he had such conversation with Allen, Allen never mentioned the fact that he was already paying interest on the city money to the defendant, but that he grumbled and protested against paying the city interest. It is not at all likely that, if Allen, the president of the bank, had been in the habit— as the record conclusively shows he had — of crediting the defendant on his individual account with the interest due the city or interest on the city money, he would not have mentioned this fact to the defendant, when he was notified that he would thereafter be called upon to pay the city interest on the money which was deposited in his bank, or that he would have contented himself with grumbling and finally saying that he did not want to pay it, but guessed he would have to. This statement is not consistent with the actions of business men.

Some objections are made to instructions No. 3, 5 and 9. The objection to No. 3 is substantially an objection to the sufficiency of the indictment, because it is objected that the court did not instruct the jury sufficiently as to what particular use of the money was not authorized by law. What we have said in regard to the sufficiency of the indictment will apply to the objection in regard to this instruction. No reasons are given for the exception to instruction No. 5, and we are unable to see in what respect it is faulty. Instruction No. 9 was as follows :

" Gentlemen, should you find from the evidence that the defendant did not cause to be made any credits of interest on his individual account for the use of city money in the bank subject to his check and control as city treasurer upon the books of the bank or agreed thereto, at or prior to the time such credits may have been made, if you find any such were made, that fact of itself would not excuse him pro-

vided you are satisfied beyond a reasonable doubt that he thereafter, and at the times charged, accepted the benefit of such credits knowing they were made by the officers of the bank for the purpose of allowing him interest for his individual account for the use of such city money on deposit in the bank so subject to his check and control as such city treasurer."

We think this instruction correctly states the law, and to hold this instruction bad would be to hold that, if a deposit were made in good faith, no conspiracy could afterwards be entered into between the bank and the depositor. The appropriation under this statute occurs at any time that the officer knowingly accepts the interest on the money. If the interest had been placed to his credit without his knowledge, as a matter of course he would not be guilty of any crime, if he had accepted and appropriated that money without knowing that it was money which was paid for the use of the city money. But the instant that he does accept it with the knowledge of what money it is, the crime is committed, no matter when the money was deposited or when the credit was made.

Considering the whole record, we are not able to say that any prejudicial error has been committed, and the judgment will therefore be affirmed.

SCOTT, ANDERS and GORDON, JJ., concur.

HOYT, C. J., dissents.