[No. 5762–3–III.   Division Three.   June 21, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. EDWARD
D. BONEFIELD, *Appellant.*

*Edward D. Bonefield,* pro se, and *Frank W. Jenny II,* for
appellant (appointed counsel for appeal).

*Curtis Ludwig, Prosecuting Attorney,* and *David R.*

*Needy, Deputy,* for respondent.

MUNSON, C.J.—Edward D. Bonefield appeals his convictions of first degree theft[1] and unlawful issuance of bank checks.[2] He contends evidence of a prior forgery conviction was not admissible for impeachment purposes and that the evidence was insufficient to convict. We affirm.

Between October and December 1982, Bonefield advertised in the Tri–City Herald and the Giant Nickle that he would sell wood at $50 per cord ($40 for senior citizens), 3–cord minimum. Approximately 79 witnesses testified they paid Bonefield deposits for cordwood they never received. These down payments varied from $20 to $320.

On December 8, 1982, Bonefield purchased airplane tickets from a Benton County travel agency; his check for $1,048 failed to clear for insufficient funds. A Peoples Bank officer testified Bonefield had been overdrawn several times

[1]RCW 9A.56.020 provides in pertinent part:

"(1) 'Theft' means:

". . .

"(b) By color or aid of deception to obtain control over the property or services of another or the value thereof, with intent to deprive him of such property or services; . . ."

RCW 9A.56.030 provides in pertinent part:

"(1) A person is guilty of theft in the first degree if he commits theft of:

"(a) Property or services which exceed(s) one thousand five hundred dollars in value; . . ."

[2]RCW 9A.56.060 provides in pertinent part:

"(1) Any person who shall with intent to defraud, make, or draw, or utter, or deliver to another person any check, or draft, on a bank or other depository for the payment of money, knowing at the time of such drawing, or delivery, that he has not sufficient funds in, or credit with said bank or other depository, to meet said check or draft, in full upon its presentation, shall be guilty of unlawful issuance of bank check. The word "credit" as used herein shall be construed to mean an arrangement or understanding with the bank or other depository for the payment of such check or draft, and the uttering or delivery of such a check or draft to another person without such fund or credit to meet the same shall be prima facie evidence of an intent to defraud.

". . .

"(4) Unlawful issuance of a bank check in an amount greater than two hundred fifty dollars is a class C felony."

in December, and she had informed him the bank was going to close his account. She further testified the bank did close Bonefield's account on December 8, 1982; his closing balance was $365.

The trial court ruled Bonefield's prior forgery conviction was admissible for impeachment purposes under ER 609(a)(2). Bonefield admitted the prior conviction on cross examination.

Bonefield first contends forgery is not a crime involving dishonesty or false statement, therefore the trial court should not have admitted evidence of his prior conviction. ER 609(a)(2) provides:

> For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross examination but only if the crime . . . involved dishonesty or false statement, regardless of the punishment.

Crimes of dishonesty or false statement under ER 609(a)(2) are those involving "crimen falsi". *State v. Burton,* 101 Wn.2d 1, 676 P.2d 975 (1984).

> At common law, the term "crimen falsi" referred to "crimes of infamy". *State v. Payne,* 6 Wash. 563, 34 P. 317 (1893).
> [P]ersons are rendered infamous . . . by having been convicted of *forgery,* perjury, subornation of perjury, suppression of testimony by bribery, or conspiracy to procure the absence of a witness, or other conspiracy, to accuse one of a crime, and barratry. And from these decisions it may be deduced, that the "crimen falsi" of the Common Law not only involves the charge of falsehood, but also is one which may injuriously affect the administration of justice, by the introduction of *falsehood and fraud.*
> (Footnotes omitted.) 2 J. Wigmore, *Evidence* § 520, at 730 (rev. 1979). *Accord,* Black's Law Dictionary 446–47 (4th rev. ed. 1968).

(Italics ours.) *State v. Burton, supra* at 7.

Forgery involves falsifying a written instrument or uttering a forged instrument with intent to defraud. RCW

9A.60.020(1). We hold it remains a crime of dishonesty or false statement under *State v. Burton, supra. Accord, State v. Jones,* 101 Wn.2d 113, 123, 677 P.2d 131 (1984) (dictum). Because Bonefield's forgery conviction was admissible under ER 609(a)(2), the trial court need not have engaged in the ER 609(a)(1) balancing test. *State v. Jones, supra* at 117–18.

Bonefield contends pro se the evidence was insufficient to convict him of either count. The test is whether, viewed in the light most favorable to the State, any rational juror could find guilt beyond a reasonable doubt. *State v. Green,* 94 Wn.2d 216, 616 P.2d 628 (1980). Under the facts and statutes set forth herein, and the unchallenged jury instructions, there was sufficient evidence. We note the State may aggregate the amounts lost in a series of transactions due to a common scheme or plan, "in determining the degree of theft involved". RCW 9A.56.010(12)(c); *State v. Barton,* 28 Wn. App. 690, 626 P.2d 509, *review denied,* 95 Wn.2d 1027 (1981).

The convictions are affirmed.

GREEN and THOMPSON, JJ., concur.

Review denied by Supreme Court September 21, 1984.