[No. 6790–1–II. Division Two. December 23, 1985.]

THE STATE OF WASHINGTON, *Respondent,* v. MITCHELL WAYNE JOHNSON, *Appellant.*

*Anthony Haselman* and *Ladenburg & Haselman,* for appellant (appointed counsel for appeal).

*William H. Griffies, Prosecuting Attorney,* and *Chris Quinn–Brintnall, Deputy,* for respondent.

REED, J.—Mitchell Wayne Johnson was convicted of first degree robbery. In this appeal, he asserts the trial court erred by: (1) refusing to excuse a juror challenged for cause; (2) denying his motion to exclude evidence of two prior convictions; and (3) refusing to declare a mistrial after a State's witness testified that defendant refused to discuss the charge after he had been advised of his *Miranda* rights. We affirm.

On July 7, 1982, the victim, Mr. H, reported to police that defendant had robbed him at knife point of jewelry and $350 in cash, and that Mr. H had been wounded during a struggle for control of the knife. The stolen money included two $100 bills. Police later observed defendant leave his motel in a taxi. As police pursued the taxi, defendant threw the victim's jewelry out the cab's window. Police arrested defendant and recovered the jewelry.

After defendant was advised of his *Miranda* rights at the police station, he was searched and the police found $73 in one of his pockets. Defendant told the officers they could find "the rest of the money" in his left sock. The $220 found in defendant's sock included two $100 bills.

During voir dire, defendant challenged juror Audrey Russell for cause based upon her employment relationship with the State. Mrs. Russell and her husband are employed by the Washington State Department of Social and Health Services (DSHS). As a DSHS caseworker, Mrs. Russell frequently is involved with the juvenile court. The State

Attorney General's Office represents DSHS in legal proceedings. The court denied the challenge after hearing Mrs. Russell state that she could be a fair and impartial juror. Defendant exercised his second peremptory challenge to exclude Mrs. Russell from the jury, and later exhausted his remaining peremptory challenges.

During direct examination of Police Detective Dispenza, the prosecutor inquired about the circumstances of defendant's arrest. The examination was directed at laying foundation for the introduction into evidence of the money confiscated from defendant. After the officer stated he had advised defendant of his *Miranda* rights, the prosecutor asked, "Did Mr. Johnson indicate whether or not he knew his rights?" Defense counsel's objection to the question was sustained. Later, the officer testified he had asked defendant if he wanted to discuss the case. Over defense counsel's objection, the officer testified that defendant said he did not wish to discuss it.[1] During a brief recess, after the

---

[1]The interrogation proceeded as follows:

Q. (By Mr. Ackerman) After what we have just discussed, did you do anything after bringing Mr. Johnson—what did you do when you got Mr. Johnson and the evidence back here?

A. I again showed him his rights form that he had signed in Olympia. I asked him if he understood his rights and he stated yes. I asked him if he wished to discuss—

MR. HASELMAN: Object, Your Honor.

MR. ACKERMAN: Well, Your Honor, this is part of the investigation, part of the background. Certainly he can say what he said to Mr. Johnson. That's not objectionable at this point.

THE COURT: You mean what the detective said?

MR. ACKERMAN: What Detective Lazares said.

THE COURT: I think he said what he said. Beyond that, the objection is sustained.

Q. (By Mr. Ackerman) Okay. Well, after we went through this rights form business, what did you do at that point?

A. I asked Mr. Johnson if he wanted to discuss the case.

Q. Okay. Did he discuss the case?

MR. HASELMAN: Object, Your Honor.

THE COURT: The objection is overruled to that question.

A. He stated no.

Q. (By Mr. Ackerman) Okay. Then what, if anything, did you do?

. . .

examination had concluded, defendant moved for a mistrial based upon the disclosure of defendant's post–arrest silence. The court denied his motion.

Defendant later testified that the $293 found on his person was his own, although he was vague about its source. He claimed he had served as a homosexual prostitute for Mr. H for many years, and that Mr. H had given him the jewelry in exchange for sexual services. Defendant claimed he cut Mr. H with a knife while defending himself from the elderly victim's attempts to force upon him certain sexual activities "that wasn't [*sic*] part of the bargain." Defendant also claimed he discarded the jewelry during the police pursuit because, after he had disagreed with Mr. H on certain aspects of their "relationship," Mr. H had threatened to cause trouble for him with the police.

Defendant admitted that, shortly before trial, he wrote to Mr. H, urging him to drop the charges if he wanted to prevent defendant from testifying about Mr. H's purported homosexuality. Defendant's attorney elicited from him information concerning his prior convictions. The jury found defendant guilty; he appeals.

 Defendant first argues that the court erred by refusing to dismiss Mrs. Russell from the jury for cause. The decision to deny a challenge for cause lies within the trial court's discretion, and will not be overturned absent a manifest abuse of discretion. *State v. Gilcrist,* 91 Wn.2d 603, 611, 590 P.2d 809 (1979). We hold the trial court did not abuse its discretion in denying defendant's challenge for cause.

Defendant's challenge was upon the ground that Mrs. Russell's employment relationship with the State implied bias to her under RCW 4.44.170(1) and RCW 4.44.180(2). RCW 4.44.180, applicable to criminal proceedings through CrR 6.4(c)(2), apparently adopted many of the common law grounds for challenging jurors. *See generally* 47 Am. Jur. 2d *Jury* § 265 (1969). It is unclear whether, at common law, government employees were disqualified by virtue of their employment from serving as jurors in a criminal case. *See*

*United States v. Wood,* 299 U.S. 123, 138–41, 81 L. Ed. 78, 57 S. Ct. 177 (1936). Whatever the law elsewhere, in Washington, state employees are not per se disqualified from serving as jurors in a criminal proceeding. *See State v. Galbraith,* 150 Wash. 664, 667, 274 P. 797 (1929).

 RCW 4.44.180(2) and CrR 6.4(c)(2) should be construed in light of their purpose. *See State v. Galbraith,* 150 Wash. at 667. *Cf. Rowley v. Group Health Coop.,* 16 Wn. App. 373, 376–79, 556 P.2d 250 (1976). In modern times, it is unlikely that jurors would be influenced by their employment relationship with an arm of the State that is not prosecuting the criminal action. We believe that in order for a government employee to stand "in the relation of . . . master and servant . . . to the adverse party" or to be an employee of "the adverse party" under RCW 4.44-.180(2), there must be a substantial relationship between the interests the prospective juror has in his employment and the interest the government is advancing as a litigant. *See State v. Galbraith,* 150 Wash. at 667. In this regard, we find convincing the following:

> The ultimate question is . . . whether, in reason, an absolute disqualification of governmental employees to serve as jurors in criminal cases is essential to the impartiality of the jury. . . .
>
> Why should it be assumed that a juror, merely because of employment by the Government, would be biased against the accused? In criminal prosecutions the Government is acting simply as the instrument of the public in enforcing penal laws for the protection of society. In that enforcement all citizens are interested. It is difficult to see why a governmental employee, merely by virtue of his employment, is interested in that enforcement either more or less than any good citizen is or should be. . . .
>
> We think that the imputation of bias simply by virtue of governmental employment, without regard to any actual partiality growing out of the nature and circumstances of particular cases, rests on an assumption without any rational foundation.

*United States v. Wood,* 299 U.S. at 147–49. *See also Ex parte Nettles,* 435 So. 2d 151, 152–54 (Ala. 1983); *McAdory*

*v. State,* 37 Ala. App. 349, 68 So. 2d 68, 69–70 (1953); *cf. State v. Krug,* 12 Wash. 288, 301–02, 41 P. 126 (1895), *appeal dismissed,* 164 U.S. 704, 41 L. Ed. 1183, 17 S. Ct. 995 (1896); *Rowley v. Group Health Coop.,* 16 Wn. App. at 376–79.

In the present case, it is not reasonable to expect that Mrs. Russell's personal and financial interests in her employment with DSHS could be affected by the State's success or failure in prosecuting Mitchell Wayne Johnson. Therefore, she did not stand in the type of relationship with the State that is contemplated by RCW 4.44.180(2). The trial court did not err by denying defendant's challenge to Mrs. Russell for cause.

Defendant also argues that the court erred by denying his motion in limine to exclude evidence of two prior convictions. Defendant's 1976 forgery conviction was a crime of the class crimen falsi, and thus was admissible under ER 609(a)(2). *State v. Bonefield,* 37 Wn. App. 878, 881, 683 P.2d 1129, *review denied,* 102 Wn.2d 1014 (1984); *see State v. Burton,* 101 Wn.2d 1, 7, 676 P.2d 975 (1984).

Defendant's 1975 conviction for felony possession of marijuana does not qualify as crimen falsi, and thus evidence of that conviction was not admissible under ER 609(a)(2). *State v. Burton,* 101 Wn.2d at 7–8. Whether to admit the evidence under ER 609(a)(1) was a decision within the trial court's discretion, and we will not disturb that decision absent a clear showing that discretion was abused. *State v. Pam,* 98 Wn.2d 748, 758, 659 P.2d 454 (1983).

According to the record, the trial court balanced the probative value of the prior conviction evidence against its prejudicial effect, as was required by *State v. Thompson,* 95 Wn.2d 888, 891–93, 632 P.2d 50 (1981).[2] Also, we note that

---

[2] At the time of defendant's trial, the trial court was not required to state, for the record, the facts favoring admission or exclusion of prior conviction evidence, as now is required by *State v. Jones,* 101 Wn.2d 113, 122, 677 P.2d 131 (1984); *see State v. Rhoads,* 101 Wn.2d 529, 532–35, 681 P.2d 841 (1984).

the potential prejudicial effect of this evidence was diminished by a limiting instruction.[3] *See State v. Thompson,* 95 Wn.2d at 892. We hold that the trial court did not abuse its discretion in admitting the evidence. *See State v. Pam,* 98 Wn.2d at 757–58; *State v. Thompson,* 95 Wn.2d at 891–92.

Although it was error for the State to inject any reference to defendant's refusal to discuss the case after receiving the *Miranda* warnings, we do not believe the error occurred in such a manner as to rise to constitutional proportion. Evidence of post–arrest silence is inherently ambiguous. *Doyle v. Ohio,* 426 U.S. 610, 617, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976); *State v. Fricks,* 91 Wn.2d 391, 395–96, 588 P.2d 1328 (1979). It is only when the prosecutor unfairly uses evidence of post–arrest silence against a defendant that his due process rights to a fair trial are violated.[4] Therefore, in determining the prejudicial effect of that evidence, the context in which the evidence is revealed must be examined to determine the extent to which it was called to the jury's attention, and the possibility that from that evidence the jury may have drawn an inference unfavorable to the defendant. *See State v. Fricks,* 91 Wn.2d at 395; *State v. Wilmoth,* 31 Wn. App. 820, 825, 644 P.2d 1211, *review denied,* 97 Wn.2d 1034 (1982).

In the present case, defendant's post–arrest silence was revealed during the course of direct examination aimed at laying the foundation for admitting into evidence the money taken from defendant's person after his arrest. We believe the police officer's testimony did not highlight or call attention to defendant's post–arrest silence in such a

---

[3]Instruction No. 4:

"Evidence that the defendant has previously been convicted of a crime is not evidence of the defendant's guilt. Such evidence may be considered by you in deciding what weight or credibility should be given to the testimony of the defendant and for no other purpose."

[4]In *Doyle v. Ohio,* the prosecutor unfairly used defendant's post–arrest silence during cross examination to impeach him, and in *State v. Fricks* testimony about post–arrest silence was not only elicited from three separate officers, but the prosecutor drew attention to that silence in his closing argument.

fashion or to such a degree as to penalize defendant for exercising his right to remain mute. The trial judge, who was in a position to observe the testimony's effect upon the jury, apparently also believed the testimony was innocuous. After defendant moved for a mistrial, based upon the reference to defendant's post–arrest silence, the trial judge characterized the reference as inadvertent. He offered to instruct the jury to disregard the evidence.[5] He also stated that, although he had attempted to exclude the evidence, he did not believe the error had been serious enough to grant a mistrial or dismiss the case. No further evidence of defendant's post–arrest silence was presented to the jury, and the prosecutor (as promised during colloquy with the judge) did not comment on the post–arrest silence during closing argument. *Cf. In re Richardson,* 100 Wn.2d 669, 675 P.2d 209 (1983) (comment on post–arrest silence not sufficiently prejudicial in the context of a personal restraint petition).

We conclude that, under the circumstances of this case, defendant's post–arrest silence was not used unfairly by the prosecutor to deprive the defendant of his due process right to a fair trial. There is no reasonable probability that the outcome of the trial would have been different and the error, if any, was harmless. *State v. Jackson,* 102 Wn.2d 689, 695, 689 P.2d 76 (1984).

Affirmed.

WORSWICK, C.J., and PETRICH, J., concur.

Reconsideration denied January 30, 1986.

Review denied by Supreme Court March 21, 1986.

---

[5]However, at defendant's request, no instruction was given.