[Nos. 7833–7–III; 7883–3–III.   Division Three.   February 9, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. BONIFACIO ROSAS GUTIERREZ, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. MARVIN CHUCK WARREN, *Appellant.*

*Douglas Haynes* and *Schwab, Kurtz & Hurley,* for appellant Gutierrez (appointed counsel for appeal).

*Thomas Bothwell* and *Prediletto, Halpin, Cannon & Scharnikow,* for appellant Warren (appointed counsel for appeal).

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Donald Kresse, Deputy,* for respondent.

THOMPSON, J.—We have consolidated the appeals of codefendants Marvin Warren and Bonifacio Gutierrez for purposes of this opinion. Mr. Warren contends his due process rights to a fair trial were violated by testimony concerning his assertion of his right to remain silent after *Miranda* warnings were given. Mr. Gutierrez also contends his right to a fair trial was denied by the comment on Mr. Warren's statement. He additionally contends the trial court committed error in ruling on evidence issues and should have dismissed the case for insufficiency of evidence. We reverse Mr. Warren's conviction and order a new trial, and reverse Mr. Gutierrez' conviction, dismissing the State's case against him.

During February 1986, police officers from the joint Yakima city/county narcotics unit were engaged in an ongoing investigation of drug trafficking in the Yakima area. On February 18, they had targeted a suspected cocaine dealer named Billie Buenz. Detective Lloyd George gave an informant money, from which the serial numbers had been recorded, and followed him to Mr. Buenz' residence. Detective George observed Mr. Buenz leave his house and go to another residence, which turned out to be Marvin Warren's house. Mr. Buenz stayed for a few minutes, then returned to his own residence. After 30 to 45 minutes, he again traveled to Mr. Warren's home, and returned. The informant remained in Mr. Buenz' home during these two trips. After Mr. Buenz returned the second time, the informant came out of the residence with a quantity of cocaine purchased from Mr. Buenz.

The officers broadened the investigation to include Mr. Warren, deciding to follow him to determine if he was the

source of Mr. Buenz' cocaine. On February 19 at about 2 p.m., they again used the informant to repeat the buy operation, noting the serial numbers on $80 given to the informant. The same sequence of events transpired, except this time Mr. Warren was followed during a trip from his residence, after the informant purchased the cocaine from Mr. Buenz.

Mr. Warren was stopped for a traffic check in order to establish his identity. During this trip, at about 3 p.m., he was accompanied by another man, identified as Dan Clark. Detectives Cyr and Thompson followed Mr. Warren and Mr. Clark to a storage unit and watched them go inside, closing the door behind them. A short time later, leaving the storage unit, they returned to Mr. Warren's residence. Mr. Buenz again made a trip back to the Warren residence. The record is unclear as to whether this trip was followed by another cocaine transaction back at Mr. Buenz' residence.

Later the same day, Detective George obtained a search warrant for the storage unit, and Mr. Warren's residence and car. Detective Cyr set up surveillance of the storage unit about 5 p.m. At about 5:20 p.m., Mr. Warren arrived again, accompanied by Bonifacio Gutierrez. Both went inside the unit and closed the door. At that time it was still daylight and quite cold outside. During the 40 minutes they stayed inside, no one entered or exited the unit. Another officer arrived to assist in the surveillance, and Detective Cyr also called for a backup uniformed officer. When Mr. Warren and Mr. Gutierrez left the unit, they got into Mr. Warren's pickup at which time they were stopped and taken into custody.

Detective George arrived sometime later with the search warrants, and the storage unit was searched. Inside, they found a 24–foot travel trailer occupying almost the entire unit. Also inside, near the front door, was a pickup canopy shell, some tires, welding equipment, and auto parts. Detective Cyr noted the lights in the storage unit did not work. The officers entered the travel trailer and located a

quantity of cocaine, marijuana, paraphernalia, and, on a table underneath the only light and next to the only source of heat, a triple beam scale, baggies, and cocaine residue.

After the search, both Mr. Warren and Mr. Gutierrez were advised of their *Miranda* rights. Detective Cyr asked Mr. Warren to comment on the narcotics found. Mr. Warren said he would rather not talk about it. Some further questions were asked. The officers searched Mr. Gutierrez and found $300 in $20 bills. The serial numbers on $120 coincided with those on the money given to the informant on the 18th and 19th for the drug buy at the Buenz residence.

Mr. Warren and Mr. Gutierrez were each charged with possession of cocaine with intent to deliver, and felony possession of marijuana. They were tried jointly.

Detective Cyr, in the State's case in chief, related the following post–*Miranda* conversation with Mr. Warren:

Q All right. Following the advisement of their constitutional rights, did you have a conversation with Mr. Warren or did you ask 'em—

A Yes.

Q (Continuing) what you would find or if he cared to comment on the narcotics found?

A Yes, sir; I did.

Q Response?

A He said he would rather not talk about it.

Q Anything else?

A Basically, that's it. I asked 'em who rented the unit. He stated, "I don't know."
I asked 'em what did he do, burglarize it?
He said no, he had the combination to the combination lock in his wallet to the storage unit.

At the close of the State's case, Mr. Gutierrez' attorney made a motion to dismiss, based on insufficient evidence to prove possession of the drugs found in the travel trailer. The court concluded there was sufficient circumstantial evidence that Mr. Gutierrez was in constructive possession of the drugs, and denied the motion. Thereafter, Mr. Gutierrez did not testify or put on any evidence. He

renewed his motion to dismiss at the close of Mr. Warren's case, after Mr. Warren testified that Mr. Gutierrez had never been to the storage unit before, had no access to it, and had only accompanied him there to view the canopy shell and trailer which he was interested in buying. Again the court denied the motion.

Mr. and Mrs. Warren testified the travel trailer was rented to John Dooley, and they had not been in the travel trailer for over a month at the time of Mr. Warren's arrest. Further testimony of Russell Jennings and Dan Clark, and receipts made out to John Dooley were introduced to corroborate the Warrens' testimony. Mr. Dooley could not be found. They acknowledged they had rented the storage unit and the trailer was theirs. However, Mr. Warren denied knowledge of the drugs found within the travel trailer.

Mr. Warren testified he did not go to the unit on the 18th of February, but did go on the 19th. He said he went twice on that day, once to pick up car parts with Dan Clark. Mr. Clark corroborated this testimony. The second time, at about 5 p.m., he picked up Mr. Gutierrez who had indicated an interest in looking at Mr. Warren's travel trailer and pickup canopy to see if he wanted to buy them. When they arrived and went inside the unit, Mr. Warren testified Mr. Gutierrez immediately decided the trailer was too big, without looking inside of it. Mr. Warren stated that while inside the storage unit, he was searching for ball joints for a 1958 Thunderbird he was working on. The auto parts he rummaged through were on the floor of the unit near the door. He testified he did not go into the trailer.

In answer to the State's query as to why the door was closed, shutting off the outside light, Mr. Warren explained the storage unit door was kept closed in order to keep heat from a portable heater, kept running inside the trailer, within the storage unit. Because it was dark, he used a flashlight to search for the ball joints. During this time, Mr. Gutierrez was inside the unit also. In addition, the Warrens testified Mr. Buenz' visits to their home were to repair a used appliance they had purchased from him.

On cross examination, the prosecutor and Mr. Warren had the following exchange:

Q You were arrested first; you were detained and formally arrested after the search was conducted of the storage unit, weren't you?
A Yes.
Q At that time the officers advised you of your rights?
A Yes.
Q They asked you about the drugs that had been found inside this storage unit, didn't they?
A Yes.
Q And you said, "I would rather not talk about it"?
A Yes.
Q Are you telling us today that you didn't know anything about those drugs being in there?
A Yes.
Q You didn't say, "What drugs?"
You didn't say, "What are you talking about?"
You said, "I would rather not talk about it," didn't you?
A Yes, I did.
Q Did you ever tell the officers about Mr. Dooley?
A I told 'em that someone else was renting the trailer to—

As noted, Detective Cyr testified Mr. Warren, when questioned, denied knowing who rented the storage unit. The jury found both defendants guilty as charged. Both Mr. Warren and Mr. Gutierrez appeal.

### State v. Warren

■ The issue in Mr. Warren's case is whether his due process rights were violated by testimony in the State's case in chief, and cross examination of Mr. Warren, concerning his post–*Miranda* statements asserting his right to remain silent.[1] After a criminal defendant has been advised of his right to remain silent, his ensuing silence or, as here, a

---

[1]While Mr. Warren did not object at trial to the testimony and questioning, constitutional error concerning comment on post–*Miranda* silence may be raised for the first time on appeal. *State v. Modica*, 18 Wn. App. 467, 476, 569 P.2d 1161 (1977); RAP 2.5(a).

simple statement asserting his right, is "insolubly ambiguous". *Doyle v. Ohio,* 426 U.S. 610, 617, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976). When the State calls attention to that silence and suggests an unfavorable inference of guilt, the defendant's due process rights are violated. This constitutional principle applies to use both in the State's case in chief and during cross examination of a criminal defendant for impeachment purposes. *State v. Fricks,* 91 Wn.2d 391, 396, 588 P.2d 1328 (1979).

On the other hand, a defendant who volunteers a post–*Miranda* statement has not remained silent as to the subject matter of that statement. *Anderson v. Charles,* 447 U.S. 404, 65 L. Ed. 2d 222, 100 S. Ct. 2180 (1980). In such a case, the prosecution can seek to elicit an explanation from the defendant for a prior inconsistent statement, and can raise unfavorable inferences from the defendant's failure to tell police at the time of his arrest crucial exculpatory information he later relates at trial. *State v. Seeley,* 43 Wn. App. 711, 714, 719 P.2d 168 (1986); *State v. Brower,* 43 Wn. App. 893, 903, 721 P.2d 12 (1986). In substance, this is what the State argues here. The State contends that by saying, "I would rather not talk *about it*" (italics ours), Mr. Warren implied he was aware of the narcotics which were the subject of the officer's inquiry. Thus, the State argues use of the statement for impeachment purposes was proper. However, this is not the type of voluntary statement involved in *Anderson v. Charles, supra.* Mr. Warren's statement was an unequivocal assertion of his right to remain silent. We hold the testimony of Detective Cyr concerning the statement, coupled with the prosecutor's questions and unfavorable inferences on cross examination of Mr. Warren, violated his constitutional rights to due process.

The State contends that even if error, it was harmless.[2] A constitutional error is harmless if the appellate court is convinced beyond a reasonable doubt that any

---

[2]Additionally, the State cites *State v. Johnson,* 42 Wn. App. 425, 431, 712 P.2d 301 (1985) and argues its holding applies here. *Johnson* held a comment on

reasonable jury would have reached the same result in the absence of the error. The court looks only at the untainted evidence to determine if that evidence is so overwhelming it "necessarily leads to a finding of guilt". *State v. Guloy,* 104 Wn.2d 412, 426, 705 P.2d 1182 (1985), *cert. denied,* 475 U.S. 1020, 89 L. Ed. 2d 321, 106 S. Ct. 1208 (1986). The constitutional harmless error test has been applied to the State's introduction of testimony that a criminal defendant remained silent following *Miranda* warnings. *State v. Evans,* 96 Wn.2d 1, 633 P.2d 83 (1981).

The harmless error issue in this case is similar to that in *State v. Fricks, supra.* There, circumstantial evidence linked the defendant to burglary of a service station. The defendant's confession, later recanted, was also admitted. On appeal, the court held the State's conduct in making references to defendant's post–*Miranda* silence, during the State's case in chief, violated his due process rights. On the issue of harmless error the court stated:

> The State contends, however, that any constitutional error was harmless. We cannot agree. Defendant's credibility was at issue because he testified on his own behalf on disputed matters. His exculpating story was plausible. While the State has substantial evidence against him, its case is not overwhelming.

*Fricks,* at 396. The court concluded prejudicial constitutional error was committed and ordered a new trial. In this case, Mr. Warren's credibility was also at issue because he testified on his own behalf concerning disputed facts. His exculpating story was also plausible. He presented corroborating testimony and a receipt in an effort to support his story.

---

post–*Miranda* silence was not constitutional error in the manner it occurred in that case. This was because it was only revealed in a brief statement on direct examination of the police officer who gave the *Miranda* warnings and not unduly emphasized by the prosecutor. In contrast, Mr. Warren's statement was utilized on cross examination to hammer home the prosecutor's contention Mr. Warren's professed ignorance of the drugs in the trailer was unbelievable. *Johnson* is distinguishable.

Nevertheless, the State argues it produced overwhelming evidence linking Mr. Warren to the premises where the drugs were found. Possession of controlled substances may be shown by proof of dominion and control over the premises where drugs are found. *State v. Callahan,* 77 Wn.2d 27, 29, 459 P.2d 400 (1969); *State v. Weiss,* 73 Wn.2d 372, 438 P.2d 610 (1968). However, if Mr. Warren's story had been believed by the jury, there is a reasonable doubt whether it would have found he exercised the necessary dominion and control over the trailer.

As in *Fricks,* it is difficult to conclude that without the improper references to Mr. Warren's postarrest assertion of his right to remain silent and the unfavorable inferences contained in the prosecutor's use of the statement for impeachment purposes, the jury would still have not believed his exculpating story and reached the same verdict. Because credibility determinations cannot be duplicated by a review of the written record, at least in cases where the defendant's exculpating story is not facially unbelievable, this court is not in a position to say, beyond a reasonable doubt, that any reasonable jury would have reached the same result, absent the prejudicial error committed. The State presented circumstantial evidence of Mr. Warren's guilt, but it did not constitute overwhelming evidence. Thus, we conclude the violation of Mr. Warren's due process rights was not harmless. Accordingly, we reverse his conviction and order a new trial.

### State v. Gutierrez

■ The first question raised by Mr. Gutierrez is whether a violation of his codefendant's due process rights somehow violates his rights as well. None of the post–*Miranda* statements of Mr. Warren directly implicated Mr. Gutierrez; the improper inferences relate to Mr. Warren. The jury was properly instructed not to consider evidence of Mr. Warren's guilt in deciding whether Mr. Gutierrez was guilty. The general rule is that a person does not have standing to vindicate the constitutional rights of a third

party. *Rakas v. Illinois,* 439 U.S. 128, 58 L. Ed. 2d 387, 99 S. Ct. 421 (1978); *Singleton v. Wulff,* 428 U.S. 106, 113–14, 49 L. Ed. 2d 826, 96 S. Ct. 2868 (1976). Because *Miranda* warnings are based on the Fifth Amendment privilege against self–incrimination, and because Fifth Amendment rights are purely personal rights, Gutierrez does not have standing to raise a violation of Mr. Warren's due process rights. *See United States v. Cardenas Alvarado,* 806 F.2d 566, 574 (5th Cir. 1986). Thus, while the improper questioning requires reversal of Mr. Warren's conviction, it does not impact the conviction of Mr. Gutierrez.

We next decide whether the trial court erred in denying Mr. Gutierrez' motion to dismiss at the close of the State's case based on insufficiency of the evidence. Because of our disposition of this issue, we need not discuss Mr. Gutierrez' remaining assignments of error concerning admission of evidence of the identified drug money found on his person and alleged prosecutorial misconduct regarding the placement of boxes marked "Admitted" and "Not admitted" in the jury's view during closing argument.

Mr. Gutierrez was convicted of possession of a controlled substance: cocaine with intent to deliver, and felony possession of a controlled substance: marijuana (over 40 grams). Possession, actual or constructive, is an essential element of the crimes charged. Here, the State relied on constructive possession.

Constructive possession is established when the person charged has dominion and control over either the drugs or the premises where the drugs are found. *State v. Callahan,* 77 Wn.2d 27, 459 P.2d 400 (1969); *State v. Wood,* 45 Wn. App. 299, 312, 725 P.2d 435 (1986); *State v. Hystad,* 36 Wn. App. 42, 49, 671 P.2d 793 (1983). Even though there may be insufficient direct evidence to establish constructive possession, it can be proved by substantial circumstantial evidence. *State v. Talley,* 14 Wn. App. 484, 487, 543 P.2d 348 (1975) (quoting *State v. Sanders,* 7 Wn. App. 891, 892–93, 503 P.2d 467 (1972)). However, mere proximity to the items alleged to be constructively possessed, without proof of

dominion and control over the property or premises where found, is not sufficient proof of possession. *State v. Callahan, supra; see also State v. Plank,* 46 Wn. App. 728, 733, 731 P.2d 1170 (1987); *State v. Summers,* 45 Wn. App. 761, 765, 728 P.2d 613 (1986); *State v. McCaughey,* 14 Wn. App. 326, 541 P.2d 998 (1975); *State v. Harris,* 14 Wn. App. 414, 417, 542 P.2d 122 (1975).

*State v. Callahan, supra,* is the leading case regarding constructive possession of narcotics. There, the evidence linking the defendant to the drugs and the premises searched, found insufficient to prove constructive possession, included: (1) two books and two guns belonging to the defendant found on the searched houseboat; (2) defendant had stayed 2 to 3 days on the houseboat but paid no rent; (3) most of the drugs were found near the defendant; and (4) he admitted having handled the drugs.

Here, the evidence the State produced to show Mr. Gutierrez' constructive possession of the drugs included the identified drug money found on his person, and his accompanying the renter of the storage unit and the owner of the travel trailer, Mr. Warren, to the unit, and staying within the unit for 40 minutes. There was no evidence Mr. Gutierrez had any rental interest in the storage unit or travel trailer, kept any property within the unit, or had ever previously been seen at the unit. There was no direct evidence Mr. Gutierrez entered the travel trailer while in the storage unit. This evidence is tested under the *State v. Green,* 94 Wn.2d 216, 616 P.2d 628 (1980) sufficiency of the evidence test, *i.e.,* whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, viewing the evidence in the light most favorable to the prosecution.

There is less evidence to establish dominion and control of the contraband here than in *Callahan. See also State v. Knapstad,* 41 Wn. App. 781, 784, 706 P.2d 238 (1985), *aff'd,* 107 Wn.2d 346, 729 P.2d 48 (1986). The State is correct that there is a circumstantial link between the earlier drug sales on the 18th and 19th, and money found on Mr.

Gutierrez. Nevertheless, while minimally relevant to show-
ing Mr. Gutierrez was in some way connected with those
drug purchases, this evidence does not show possession of
the drugs found in the trailer. In addition, unlike Mr. War-
ren, there is no evidence linking Mr. Gutierrez to the stor-
age unit or trailer other than a 40-minute visit. We
conclude there was insufficient evidence presented by the
State, and it was error to deny Mr. Gutierrez' motion to
dismiss. Accordingly, we reverse his conviction and dismiss
the State's case.

McINTURFF, C.J., and GREEN, J., concur.

Review denied by Supreme Court May 31, 1988.